**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Janet E. Taylor, | ) | No. CV-10-2453-PHX-GMS |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) ) | |
| Transportation Insurance Company, a foreign licensed insurer, | ) ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court is a Motion to Remand (Doc. 7) filed by Plaintiff Janet E. Taylor ("Taylor"). For the following reasons, the Court denies the motion.

**BACKGROUND**

The Complaint alleges that Defendant Transportation Insurance Company ("Company") "provided a workers' compensation policy to the Plaintiff's employer, Kelly Services, Inc., for the calendar year, 2006." (Doc. 1, ¶ 3). This policy was in force on September 13, 2006, when Plaintiff sustained severe injuries to her left elbow and arm while walking to work at a radio station. (*Id.* at ¶¶ 3–4, 7). Plaintiff reported her injury to Defendant on the same day, but Defendant allegedly denied the claim for workers' compensation in a notice sent to Plaintiff on October 12, 2006. (*Id.* at ¶¶ 8–9). On April 10, 2007, an Administrative Law Judge ("ALJ") "found that the Plaintiff was injured on the premises of the radio station and that her injury arose out of and in the course of employment

and deemed the claim compensable." (*Id.* at ¶ 10). The ALJ ordered Defendant to pay Plaintiff's "litigation, medical, surgical, and hospital benefits from September 13, 2006 . . . and total temporary or total partial compensation benefits . . . until such time as her condition becomes medically stationary." (*Id.* at ¶ 11). While Defendant asserts that it has paid over $275,000 in Plaintiff's medical bills (Doc. 8), Plaintiff alleges that Defendant has refused to pay for a number of the bills, either in whole or in part. (Doc. 1, ¶¶ 12, 18, 25, 27, 29, 33). Plaintiff additionally alleges that Defendant delayed many essential procedures by denying benefits and by requiring Plaintiff to attend three Independent Medical Examinations "even though the Court had already found the Plaintiff's injuries to be compensable." (Doc. 1, ¶ 15).

The Complaint alleges breach of contract and bad faith arising out of Defendant's alleged failure to pay Plaintiff's medical bills. While Plaintiff does not seek a specific dollar amount in her prayer for relief, she seeks judgment against Defendant for all damages incurred, all general damages incurred, all future damages that may be awarded, punitive damages, reasonable attorney fees and costs, and all just and further relief as this Court deems proper.

On November 12, 2010, Defendant filed a notice of removal to this Court under 28 U.S.C. § 1441(a). Defendant asserts that this Court has diversity jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiff contends that the Defendant has not met its burden of proof in establishing that the amount in controversy requirement exceeds the jurisdictional threshold.

## DISCUSSION

### I.   Legal Standard

"[A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). There is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the

first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). Therefore, "the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566; *see Prize Frize, Inc. v. Matrix Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999) ("The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction.") (citing *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988)).

One way a district court may have removal jurisdiction is if the plaintiff and defendant are citizens of different states and the "matter in controversy exceeds . . . $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The burden of proof regarding the amount in controversy depends on whether the face of the plaintiff's complaint alleges a specific amount or whether the complaint is ambiguous. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402, 404 (9th Cir. 1996). Where it is unclear from the face of the complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *Guglielmino*, 506 F.3d at 699 (citing *Sanchez*, 102 F.3d at 404).

**II.    Amount in Controversy**

Plaintiff's Complaint neither alleges a specific dollar amount nor suggests what amount of damages Plaintiff seeks. In her Motion to Remand, Plaintiff confirms that "any damage awarded to Plaintiff is speculative and will be determined at a later stage by a jury." (Doc. 7). Because Plaintiff's complaint is "unclear or ambiguous," *Guglielmino*, 506 F.3d at 699, Defendant "bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [$75,000]." *Sanchez*, 102 F.3d at 404 ("[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."). The Court finds that Defendant has satisfied its burden.

In her Complaint, Plaintiff alleges that Defendant has either refused to pay or only partially paid the medical bills she incurred at the emergency room on the day of her injury,

and as a result of several subsequent surgeries and treatments that she underwent. (Doc. 1, ¶ 12, 18, 25, 33). This claim is relevant to the amount in controversy analysis given the extensive nature of Plaintiff's alleged injuries arising out of the accident. These include a dislocated elbow, fractured left radius, shattered coronoid process, tendon, muscle, ligament and nerve damage, and other serious injuries to her neck, shoulder and knee. (Doc. 1, ¶ 7). Plaintiff further alleges that as a result of her direct injuries, she also sustained secondary complications, including the following: nerve and swallowing issues (¶ 22), bladder problems (¶ 22), urinary tract infection (¶ 28), deep vein thrombosis (¶ 34), crooking and deformation in her left hand (¶ 36), excessive uterine and rectal bleeding (¶ 43), depression (¶ 44), severe abdominal pain and inability to eliminate waste from her body (¶ 30). Plaintiff alleges that her complications have required her to undergo a wide range of surgical procedures, including "bowel resection and disimpaction" (¶ 31), "spinal fusion and discectomy" (¶ 22), and "surgery on her elbow to move the compressed ulnar nerve." (Doc. 1, ¶ 38). In light of the scope and gravity of Plaintiff's alleged direct and secondary injuries, and the significant medical procedures at play, it is more likely than not that the amount in controversy for her bad faith claim alone satisfies the $75,000 threshold.

Defendant has also provided evidence that, as of October 25, 2010, it has paid over $275,000 in Plaintiff's medical bills.[1] (Doc. 8, Ex. A). Given the extent of Plaintiff's injuries and complications, the evidence provided by Defendant, while not dispositive, strongly suggests that even if Plaintiff is alleging that a portion of her medical bills remain unpaid, the requisite amount in controversy is met.

Plaintiff also alleges that "on April 6, 2008, the Defendant sent a demand letter

---

[1] To determine if Defendant meets the preponderance of the evidence standard, the Court considers "facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1090, 1009 (9th Cir. 2003) (internal quotation marks admitted). Because it is relevant to the amount in controversy, the Court considers Defendant's submission of its "payment query results,"attached to its Response. (Doc. 8, Ex. A).

- 4 -

demanding $186,743.49 from the settlement through a third party lawsuit. On April 21, 2010 the Defendant demanded repayment of $282,476.40." (Doc. 1, ¶ 21). Even though Defendant's demand letters are not dispositive, "it may be relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Brown v. Bankers Life & Cas. Co.*, 2009 WL 2914215, at *4 (D. Ariz. Sept. 8, 2009) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (internal quotation marks omitted)). The amounts represented in the demand letters, in conjunction with the $275,000 in medical bills Defendant has allegedly already paid, again suggest that the amount in controversy exceeds the threshold.

The extensive nature of Plaintiff's injuries, as alleged by her, taken together with the medical bills already paid by Defendant, the figures mentioned in the demand letters, and the general nature of the bad faith claim being asserted here, all establish that Defendant has satisfied its burden regarding the amount in controversy requirement. The Court also takes note of Plaintiff's unwillingness to state on the record, during a hearing on January 7, 2010, that the amount of damages she seeks would fall below the jurisdictional threshold.

## CONCLUSION

In light of the foregoing facts and circumstances, removal to federal court was proper because Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000 to establish jurisdiction. As such, remand to Maricopa County Superior Court is inappropriate.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (Doc. 7) is **DENIED**.

DATED this 18th day of February, 2011.

*A. Murray Snow*

G. Murray Snow
United States District Judge